UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANGELA COFFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

COMES NOW Plaintiff, Angela Coffer, and for her claims and causes of action against Defendant, Lincoln National Life Insurance Company, states as follows:

PARTIES

1. Angela Coffer ("Coffer") is a resident and citizen of the State of Missouri.
2. Lincoln National Life Insurance Company, ("Lincoln") is an out of state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln in this action.

JURISDICTION AND VENUE

3. Coffer brings her claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.
4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).
5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.
7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

STATEMENTS OF FACT

9. Since 2008, Coffer worked as a Registered Nurse II for St. Luke's Health System ("St. Luke's").
10. During her employment, Coffer suffered from chronic and progressive conditions including neuropathy, inflammatory polyarthralgia, neurocognitive disorder, arthritis, and tachycardia.
11. Coffer's chronic conditions impaired her ability to perform her own occupation resulting in her eventual leave from work on or about May 31, 2021.
12. St. Luke's sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.
13. The Plan is an employee welfare benefits plan as defined by 29 U.S.C. § 1002(1).
14. The Plan offered disability benefits to qualifying St. Luke's employees, including Coffer.
15. At all relevant times, Coffer has been a participant and a covered person under the terms of the Plan.
16. St. Luke's is the administrator of the Plan.
17. St. Luke's delegated or attempted to delegate the function of issuing the LTD claim determinations to Lincoln.
18. St. Luke's and Lincoln entered into an administrative services contract through which St.

Luke's paid Lincoln for acting as claim administrator.

19. Coffer enrolled in the Plan and was eligible for benefits.

20. The Plan provided that employees would be entitled to receive LTD benefits if they became "Disabled."

21. Lincoln represents that The Plan defines "Disabled" as follows:

**"Disability"** or **"Disabled"**, with respect to Long Term Disability, means:

Applicable to Class 2, 3, 5, 6, 7:

a. if the Covered Person is eligible for the Maximum Own Occupation benefit, **"Disability"** or **"Disabled"** means during the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period, as a result of an Injury or Sickness, he is unable to perform the Material and Substantial Duties of his Own Occupation.

Applicable to Class 1, 4:

b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, **"Disability"** or **"Disabled"** means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

22. In December 2021, Coffer initiated an LTD claim with Lincoln.

23. Following her claim initiation, Lincoln approved Coffer's claim, finding her incapable of working in her own occupation.

24. Lincoln began paying LTD benefits on March 4, 2022, and paid Coffer throughout the 24-month own occupation period until March 3, 2024.

25. On October 17, 2023, Lincoln vocational case manager Vanessa Scungio performed a Transferable Skills Analysis in which she concluded that, based on Coffer's restrictions and limitations1 Coffer was capable of performing the occupations of Cardiac Monitor Technician, Telephone Triage Nurse, Nurse Case Manager and Utilization Review Coordinator.

26. On October 20, 2023, Lincoln denied Coffer's LTD claim.

27. On October 31, 2023, Coffer requested her claim file and any documents Lincoln relied upon in making its determination.

28. On November 7, 2023, Lincoln provided the claim file to Coffer, but failed to provide a copy of the LTD policy.

29. On April 10, 2024, Coffer appealed Lincoln's denial.

30. Counsel for Coffer attached appeal evidence on an enclosed disc, as well as through an electronically accessible link provided within the appeal letter.

31. On December 22, 2021, Coffer was seen by Dr. Michael DiBernardo, MD, and reported feeling very weak in her legs. She also reported throbbing and leg weakness, and that she had had COVID a year ago and still had some ongoing illnesses that seemed related to persistent COVID symptoms.

32. On January 21, 2022, Coffer was seen by Dr. Jay Robinson, MD, for a neurology visit. This was for evaluation of numbness and paresthesia in the feet. She complained of numbness and paresthesia involving both legs, worse distally. Long-haul Covid was suspected. Coffer also reported visual changes, difficulties in concentrating and completing tasks, poor memory, brain fog, and seeing "halos" around objects. Dr. Robinson also ordered an MRI of the brain and cervical spine.

33. On January 31, 2022, Coffer saw Dr Steven Kosn, MD, who discussed nerve conduction studies.

34. On February 10, 2022, Coffer was seen by Dr. Shirley Wang, MD, for a rheumatology visit. This was for evaluation of joint pain. She reported morning stiffness along with lower extremity paresthesia. Coffer reported joint pain, lower leg tingling, numbness in her feet and

toes, brain fog, fatigue, difficulty concentrating and lower back pain. Dr. Wang ordered Coffer to have her labs taken and discussed Gabapentin prescription.

35. On February 14, 2022, Coffer was seen by her primary care provider and an attending physician statement was completed.

36. On February 15, 2022, Coffer was seen by her primary care provider. Coffer reported that she had not been feeling well and had lower extremity weakness. Coffer's extremities were noted to be cool to touch. Labs were ordered for evaluation of arthralgias, and an x-ray of the knees and hands was performed.

37. On February 17, 2022, Coffer's head and spine MRI's were interpreted.

38. On February 22, 2022, Coffer was seen by rheumatology.

39. On March 2, 2022, Coffer was seen by rheumatology. Coffer reported persistent muscle and joint pains along with stiffness. A diagnosis of inflammatory arthralgia (seronegative) was made due to her symptoms,

40. Also on March 2, 2022, an attending physician statement was completed by Dr. Robinson, opining that Coffer cannot perform job duties.

41. On March 4, 2022, Coffer was seen by her primary care provider and reported feeling weak, neuropathy in all toes, and numbness and tingling in bilateral upper and lower extremities.

42. On April 5, 2022, Coffer's skin biopsy demonstrated evidence of small fiber sensory neuropathy.

43. On April 13, 2022, Coffer was seen by neurology for evaluation of lower extremity paresthesia. The note states that she is unable to take gabapentin due to side effects. Coffer continued to have difficulty with numbness, paresthesia, difficulty with cognition, fatigue, and visual dysfunction.

44. On April 14, 2022, Coffer underwent a neuropsychological examination by Nicholas Noll, PhD. Dr. Noll administered a battery of tests and determined that Coffer suffers from cognitive dysfunction as a consequence of her medical conditions. He found that she suffers from lapses in concentration and attention, diminished verbal processing, and impaired recall. Dr. Noll found that Coffer's subjective complaints of "brain fog" and cognitive difficulties were confirmed by testing.

45. On May 5, 2022, Coffer met with her primary care provider for a follow-up. The note states that she saw rheumatology, but no diagnosis was made. She continued to report significant symptoms including ongoing weakness. She also reported "brain fog."

46. On May 26, 2022, Coffer was seen by her primary care provider and reported ongoing symptoms and essential tremor of both hands. "She is able to do some activities but then seems to hit a wall within about 30 minutes and feels very weak and shaky." Physical examination showed tremors and muscle strength of 4 out of 5.

47. On June 15, 2022, Coffer was seen by neurology. She reported lower extremity weakness and paresthesia. Small fiber neuropathy was suspected.

48. On July 18, 2022, Coffer was seen by neurology. Coffer reported that she can no longer tolerate much physical activity because more than 30 minutes of activity resulted in significant symptoms. She did not tolerate gabapentin due to side effects. Dr. Amanda Thuringer, MD recommended seeing a neuromuscular specialist. Dr. Thuringer opined that Coffer's neurologic symptoms are fairly disabling and that she will not be able to return to work at her current functional level.

49. On August 3, 2022, Coffer was seen by neurology. She reported persistent burning sensation in her lower extremities as well as weakness, situational depression because of her health and

lack of income, and difficulty with memory. A mild degree of cognitive disorder was noted during this visit.

50. On December 2, 2022, Coffer underwent a 72-hour Holter Monitor. The Monitor determined that occasional premature atrial complexes were present, and that Coffer's symptoms correlate with the presence of paroxysmal supraventricular tachycardia.
51. On January 25, 2023, Coffer was treated by Dr. Wang for joint pain.
52. On February 2, 2023, Coffer was treated for tachycardia.
53. On May 16, 2023, Coffer was treated for tachycardia. She reported frequent episodes of rapid heart rate, lightheadedness, and shortness of breath.
54. On April 14, 2023, Coffer was treated for palpitations and tachycardia.
55. In May 2023, Dr. Mark Altomari, PhD, concluded that Coffer suffers from mental impairments that cause her moderate limitations in understanding, remembering, or applying information. She also suffers from a moderate impairment in concentrating, persisting, and maintaining pace.
56. On May 15, 2023, Coffer was seen by Dr. DiBernardo and treated for upper respiratory illness.
57. On May 23, 2023, Coffer was seen by Dr. Wang for treatment of joint pain. Coffer reported weakness and pain in her knees, back, tailbone, left hip, and shoulders.
58. On May 26, 2023, Coffer was seen for lab work and treatment for various medical conditions. Dr. DiBernardo documented that Coffer's rheumatologist is treating her for inflammatory arthritis, her cardiologist was treating her for tachycardia with ablation unsuccessfully, and that she was still exhausted and having difficulty with focus and concentration.

59. On July 3, 2023, Coffer was seen by Dr. DiBernardo and reported frequent sores, flares, and pain in her feet. On exam, her pharynx was slightly erythematous, and there was tenderness to both heels.

60. On July 28, 2023, Lincoln purchased a peer review report from Dr. Hossein Molazadeh, MD. Dr. Molazadeh opined that Coffer is unlimited, unrestricted, and capable of sustaining work on a full-time basis.

61. Dr. Molazadeh neither met with, treated, nor examined Coffer.

62. In August 2023, Coffer supplied Lincoln with an Attending Physician Statement ("APS") completed by Daniel Zimmerman, MD, based on his physical examination of her.

63. On September 20, 2023, Michael DiBernardo, Coffer's treating physician, completed a Residual Functional Capacity Report. Dr. DiBernardo was asked to assess Coffer's functional capacity in light of the joint and body pain caused by Coffer's inflammatory disease and long-haul Covid. Dr. DiBernardo assessed that Coffer was only able to sit for two hours at one time, and for a total of four hours per workday. He found similar limitations with respect to standing and walking. He further determined that during an eight-hour workday, Coffer would need to lie down, recline, or elevate her feet for up to four hours.

64. On September 27, 2023, Coffer was seen by Shirley Wang, MD at Empower Rheumatology. On that date, Coffer presented for treatment of ongoing joint pain. On exam Dr. Wang appreciated tender joints of the left and right hand and fingers. She noted a positive ANA 1:40 with onset of peripheral neuropathy.

65. On October 10, 2023, Lincoln again purchased a peer review report from Dr. Jon Glass, MD, who opined that Coffer could sit and stand for 2 hours per 8-hour workday for 15 minutes at a time.

66. Dr. Glass neither met with, treated, nor examined Coffer.

67. On November 3, 2023, Dr. DiBernardo completed an Attending Physician Statement limiting Coffer to sitting or standing for no more than two hours at time and to fingering, keyboarding, grasping, handling, and reaching for no more than 2.5 hours during an eight-hour workday.

68. In March 2024, Lincoln purchased peer review reports from Dr. Roj Ahsan, and Dr. James Taylor. Lincoln's reports did not contain any information explaining the relationship between the physicians and Lincoln.

69. Neither Dr. Ahsan nor Dr. Taylor met with, treated, or examined Coffer.

70. Both Dr. Ahsan and Dr. Taylor strongly implied in their reports that Coffer has engaged in symptom magnification or purposely skewed the results of testing by selective effort.

71. Dr's. Ahsan and Taylor did not attempt to speak with Coffer's treating physicians or other medical professionals involved with her care.

72. Both Dr. Ahsan and Dr. Taylor found Coffer unlimited and unrestricted in her physical and mental capacity, and capable of working a full-time job.

73. Lincoln did not supply all of Coffer's medical evidence to Dr's. Ahsan and Taylor.

74. On April 26, 2024, Lincoln again denied Coffer's LTD claim.

75. Coffer has presented a colorable claim for LTD benefits to Lincoln.

76. At all relevant times, Coffer was and remains "Totally Disabled" under the Plan.

77. Coffer has exhausted all administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

78. Coffer realleges the preceding paragraphs as if fully set forth herein.

79. Coffer is entitled to all unpaid and accrued LTD benefits, as Lincoln;

a. Made an unfavorable decision without substantial evidence;

b. Did not consider any of the evidence submitted by Coffer on claim initiation and/or appeal;

c. Failed to properly consider Coffer's medical impairments and resulting limitations;

d. Failed to conduct any occupational or vocational review;

e. Ignored evidence that Coffer's conditions have not improved to the present; and

f. Issued an unfavorable decision that was arbitrary and capricious.

80. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Coffer is entitled to an award of actual damages for losses suffered.

81. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

82. Lincoln has not satisfied its obligation to pay Coffer's LTD benefits.

83. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Coffer prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

COUNT II
29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

84. Coffer realleges the preceding paragraphs as if fully set forth herein.

85. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or

> responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

86. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary Lincoln of care:

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (if) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

87. As the Plan's designated claims administrator and entity exercising discretion in claims administration, Lincoln is a fiduciary.

88. Coffer participated in Lincoln's LTD benefits plans as previously indicated.

89. As the payor of benefits and the entity responsible for benefits determinations, Lincoln operates under an inherent structural conflict of interest.

90. A higher than marketplace quality Lincoln, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Lincoln's actions as a fiduciary.

91. Lincoln breached its fiduciary duty in:

92. Referring Coffer's claim for review to persons who were not able to exercise independent thought or judgment, or deviate from Lincoln's previously expressed position;

    a. Referring Coffer's claim for review to a person who was not qualified to render any medical judgments or opinions;

    b. Engaging in a direct structural conflict of interest by assuming the role of both claim administrator and potential payor of benefits;

    c. Engaging in a direct structural conflict of interest by referring Canseco claim to a person who is directly answerable to Lincoln and whose employment and compensation is determined by Lincoln;

    d. Failing to perform a meaningful review of Coffer's claim on appeal;

e. Failing to comply with its internal guidelines and claims processing procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations; and

f. Failing to provide all documents relevant to Lincoln's unfavorable decision.

93. Lincoln denied Coffer's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

94. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with a conflict of interest and breached its fiduciary duty to both Coffer and the Plan's participants and beneficiaries generally.

95. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

96. Lincoln's violations of regulations alone allow Coffer the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

97. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

98. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Coffer prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the

Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. # 64568
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF